# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRIAN R. BUTTNER, individually and d/b/a
APPLIED DESIGN RESEARCH ASSOCIATES,

Plaintiff,

v.

RD PALMER ENTERPRISES, INC., RICHARD
PALMER, RICH AND GARDNER CONSTRUCTION
COMPANY, INC., DUNN & SGROMO ENGINEERS,
PLLC, and ROBERT CHARLES ABBOTT, JR.,

Defendants.

_____

Civil Action No.:
5:13-CV-342 (LEK/TWD)


**DEFENDANT RICH & GARDNER CONSTRUCTION COMPANY, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF
RICH & GARDNER'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**


**HARRIS BEACH PLLC**
333 W. Washington Street, Suite 200
Syracuse, New York 13202
Tel: (315) 423-7100

*Attorneys for Defendant Rich and
Gardner Construction Company, Inc.*

Of Counsel
  James R. Muldoon, Esq.
  Brendan M. Palfreyman, Esq.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT .............................................................................................. 1

FACTS ..................................................................................................................................... 2

ARGUMENT ........................................................................................................................... 5

I.     Standard on a Motion for Summary Judgment ................................................................5

II.    RICH & GARDNER DID NOT INFRINGE THE BUTTNER PLANS
VIA REPRODUCTION OR THE CREATION OF THE RICH &
GARDNER PLANS .................................................................................................5

     A.   Rich & Gardner Did Not Infringe the Buttner Plans By Making a
Photocopy ...............................................................................................................6

     B.   Rich & Gardner Did Not Infringe the Buttner Plans in Drafting the
Rich & Gardner Plans .............................................................................................8

          1.   Plaintiff Must Demonstrate "Near Identity" Between the Works ........................8

          2.   Plaintiff Fails to Adduce Sufficient Evidence to Meet the *Prima
Facie* Burden of Demonstrating Copyright Infringement ...................................10

          3.   The Rich & Gardner Plans are Not Substantially Similar to the
Buttner Plans as a Whole ...................................................................................12

          4.   The Elements of the Buttner Plans are Virtually All
Unprotectable ....................................................................................................15

          5.   Given the Thin Protection Afforded the Buttner Plans, the Rich
& Gardner Plans are Not Nearly Identical or Substantially
Similar to Even Only the Buttner 2008 Plans .....................................................19

          6.   The Earliest Rich & Gardner Plans are Not Substantially Similar
or Nearly Identical to the Buttner Plans .............................................................22

i

III.   EVEN IF THE RICH & GARDNER PLANS ARE FOUND TO INFRINGE, THE DAMAGES ARE MINIMAL ...............................................................23

    A.   Damages for Copyright Infringement Are Not Calculated Using Contractual Measures of Damages, Especially With Regards to a Contract to Which Rich & Gardner Was Not a Party ..................................................23

    B.   Damages for Infringement Stemming from the Creation of Architectural Drawings Cannot be Based on the Construction of a Building ....................................................................................................................25

CONCLUSION............................................................................................................... 26

# TABLE OF AUTHORITIES

Page

**Cases**

*Amore v. Novarro*, 624 F.3d 522 (2d Cir. 2010)........................................................................ 5

*Attia v. Soc'y of the New York Hosp.*, 201 F.3d 50 (2d Cir. 1999) ............................................ 19

*Beaudin v. Ben & Jerrys' Homemade, Inc.*, 95 F.3d 1 (2d Cir. 1996) ......................................... 9

*Celotex Corp. v. Catrett*, 417 U.S. 317 (1986) .......................................................................... 5

*Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*,
    807 F.2d 1110 (2d Cir. 1986)........................................................................................... 24

*Greenberg v. Town of Falmouth*, No. Civ.A 04-11934-GAO,
    2006 WL 297225 (D. Mass. Feb. 8, 2006) ................................................................. 17, 18

*Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC*,
    716 F. Supp. 2d 428 (E.D. Va. 2010) ................................................................................ 9

*Hollander v. Steinberg*, 419 F. App'x 44 (2d Cir. 2011) ............................................................ 6

*Intervest Const., Inc. v. Canterbury Estate Homes, Inc.*,
    554 F.3d 914 (11th Cir. 2008) .......................................................................................... 9

*Kerzer v. Kingly Mfg.*, 156 F.3d 396 (2d Cir. 1998)................................................................... 5

*Knitwaves, Inc. v. Lollytags Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995)..................................... 9, 15

*N. Forest Dev., LLC v. Walden Ave. Realty Assocs.*,
    No. 06-cv-00378(A)(M) 2009 WL 5959961
    (W.D.N.Y. July 22, 2009)...................................................................... 9, 17, 18, 19

*Nelson-Salabes Inc. v. Morningside Holdings*,
    No. Civ. B-98-2226, 2001 WL 419002 (D. Md. Feb. 16, 2001);
    *vacated in part on other grounds* by 284 F.3d 505 (4th Cir. 2002)..................................... 18

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010)................................................................................. passim

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ............................................................. 11

*Rottlund Co., Inc. v. Pinnacle Corp.*,
No. Civ. 01-1980 DSD/SRN, 2004 WL 1879983
(D. Minn. Aug. 20, 2004) ........................................................................... 18

*Seidman v. Indus. Recycling Props., Inc.*,
106 A.D.3d 983 (2d Dep't 2013) ............................................................... 24

*TransWestern Pub. Co. LP v. Multimedia Mktg. Assocs., Inc.*,
133 F.3d 773 (10th Cir. 1998) ..................................................................... 9

*Trek Leasing, Inc. v. United States*, 66 Fed. Cl. 8 (Fed. Cl. 2005) ........................................... 9, 16

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
338 F.3d 127 (2d Cir. 2003)..................................................................... 8, 23

*Wagner v. Swarts*, 827 F. Supp. 2d 85 (N.D.N.Y. 2011)
*aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012)................. 5, 10

*Well-Made Toy Mfg. Corp v. Goffa Int'l Corp.*,
354 F.3d 112 (2d Cir. 2003)....................................................................... 11

*Zalewski v. T.P. Builders, Inc.*, 875 F. Supp. 2d 135 (N.D.N.Y. 2012) ................................ passim

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................... 5

**Statutes**

17 U.S.C. § 504(b) ........................................................................... 23, 24, 25

37 C.F.R. § 202.11(c)(2) .............................................................................. 13

37 C.F.R. § 202.11(d)(1).......................................................................... 15, 19

37 C.F.R. § 202.11(d)(2)..................................................................... 10, 15, 18

**Treatises**

4 Melville B. Nimmer & David Nimmer,
NIMMER ON COPYRIGHT § 13.03[A][4] (Matthew Bender, Rev. Ed.)......................... 9

## PRELIMINARY STATEMENT

Plaintiff has moved for partial summary judgment on its infringement claim against Rich & Gardner based on only the initial iteration of plans drafted by Rich & Gardner for a gas station construction project in Cortland, NY, and not the contract drawings or the construction of the station itself. Plaintiff alleges that Rich & Gardner infringed by making a photocopy of Plaintiff's architectural plans and by drafting its own plans. Rich & Gardner opposes this motion and cross moves for a declaration of non-infringement because: (1) Rich & Gardner did not make a photocopy of Plaintiff's plans and Plaintiff has put forth no direct proof otherwise; and (2) Rich & Gardner's plans are not substantially similar or nearly identical to Plaintiff's plans as a whole. First, Plaintiff fails to meet his burden on summary judgment because he offers no explanation regarding similarities between the works and no discussion of protectable and unprotectable elements as required by controlling Second Circuit law. Second, the relevant comparison for infringement purposes is between the entirety of Plaintiff's copyrighted plans and Rich & Gardner's plans, Plaintiff cannot simply pick and choose which pieces of his plans he wishes to assert. Third, precedent requires that when the scope of protection in a copyrighted architectural work is limited to the selection and arrangement of unprotectable elements, a plaintiff must demonstrate near identity between the copyrighted work and the allegedly infringing work. Rich & Gardner will outline and describe numerous differences between its and Plaintiff's plans, as well as admissions by Plaintiff that the shifting of the dimensions from his plans to the Rich & Gardner Plans necessitated many significant changes.

Simultaneously, and by these papers, Rich & Gardner cross moves for a declaration of non-infringement with regard to each method of infringement alleged in Plaintiff's motion. Further, Rich & Gardner seeks declaratory judgment that, even if the Court were to find that the

Rich & Gardner's plans infringe Plaintiff's plans, the potential damages for such copyright infringement cannot, as asserted by Plaintiff, be based on a contractual measure of damages derived from a contract to which Rich & Gardner was not a party, nor can potential damages for infringement via the drafting of initial drawings be based on the construction of a building. For the reasons set forth below, Rich & Gardner respectfully requests that the Court deny Plaintiff's motion in its entirety and grant Rich & Gardner's motion in its entirety.

## FACTS

In 2006, Defendant Richard Palmer ("Mr. Palmer") owned a gas station that used to stand at 152 Clinton Avenue in Cortland, NY, and he became interested in constructing a new station or an addition to the existing station (the "Station Project"). Compl. ¶ 15, ECF No. 1. On March 14, 2006, Mr. Palmer signed a contract with Brian R. Buttner ("Mr. Buttner") to draft architectural plans for the Station Project (the "Buttner-Palmer Contract"). *See* Decl. of James R. Muldoon dated April 29, 2014 ("Muldoon Decl.") Ex. R. Much of the initial design was dictated by Mr. Palmer, including the shape of the building, the division of the building, a common entrance for two businesses, and the location of the manager's office. *See infra* Section II.B.4. Based on these requirements, Mr. Buttner then drafted the following plans: (1) eight site plans labeled B1, B1a, B2, B3, B3a, B4 (twice), and B4a ("Buttner Site Plans"), Muldoon Decl. Ex. C; (2) a floor plan dated July 19, 2006 and two elevations dated January 12, 2007 ("Buttner 2006 Plans"), Muldoon Decl. Ex. D; and (3) and a floor plan dated April 10, 2008 and two elevations dated August 5, 2008 ("Buttner 2008 Plans"), Muldoon Decl. Ex. E. *See Compl.* ¶ 18, ECF No. 1. The aforementioned site plans, elevations, and floor plans will be collectively referred to as the "Buttner Plans." See Pl.'s Ex. 2, ECF No. 77–6.

Later, Mr. Palmer became dissatisfied with Mr. Buttner's services due to Mr. Buttner's inability to move the Station Project through various regulatory hurdles and ceased his engagement of Mr. Buttner. Muldoon Decl. Ex. L (Deposition of Richard Palmer dated Jan. 23, 2014 ("Palmer Dep.") at 28:3-20, 30:5-16)). After Mr. Buttner authorized Mr. Palmer to use the Buttner Plans to seek a quote from a construction company to build the station, Muldoon Decl. Ex. K (Deposition of Brian Buttner dated February 5, 2014 ("Buttner Dep. Vol. II") at 216:22-217:2, in 2009, Mr. Palmer provided the Buttner 2008 Plans and some site plans drafted by Defendant Dunn & Sgromo to Defendant Rich & Gardner Construction Company, Inc. ("Rich & Gardner"). Palmer Dep. 34:18-24. The Buttner Site Plans and the Buttner 2006 Plans were never provided to Rich & Gardner. Palmer Dep. 31:13-34:24; Aff. of Joseph Donegan dated April 29, 2014 ("Donegan Aff.") ¶ 2. Rich & Gardner then sent Mr. Palmer a quote and proposal for the Station Project dated September 9, 2009. See *id*. The Station Project stalled for about a year until on September 13, 2010, Mr. Buttner and Rich & Gardner signed a contract to build the station (the "Palmer-Rich & Gardner Contract"). *See* Pl.'s Ex. 7, ECF No. 77–11. As is common in the industry, both Mr. Palmer and Rich & Gardner understood that the Dunkin' Donuts half of the floor plan was to be a "vanilla box," i.e., an empty floor plan, and that Dunkin' Donuts would be providing its own plans for that half of the building. Palmer Dep. 59:20-60:11; Donegan Aff. ¶ 3.

Throughout the drafting and building process, Mr. Palmer dictated various changes to the plans in the interest of decreasing cost and increasing efficiencies including, importantly, shifting the main entrance, and thus all the interior architecture, from the right side of the building to the center of the building. *See, e.g.*, Palmer Dep. at 65:6-23, 78:15-22. The first and earliest plans drafted by Rich & Gardner are dated September 15, 2010 (the "Earliest Rich & Gardner Plans").

The Earliest Rich & Gardner Plans comprise more than just the four elevations and one floor plan attached to Plaintiff's motion as Exhibit 8 (ECF No. 77–12), and include several different signage and front window options from which Mr. Palmer could choose.  Muldoon Decl. Ex. F.  Rich & Gardner subsequently made significant changes to the early plans (the "Later Rich & Gardner Plans").  Muldoon Decl. Ex. G.  Even more changes were made to the Later Rich & Gardner Plans as the station was being built per requests by Mr. Palmer.  Palmer Dep. at 65:6-23, 78:15-22.  Rich & Gardner then built the station, which is divided evenly between a convenience store and a Dunkin' Donuts franchise (the "Station As-Built").  Donegan Aff. ¶ 6; Muldoon Decl. Ex. F.

On July 27, 2011, after the Station-As Built had been constructed and the Certificate of Occupancy issued, Plaintiff registered the Buttner Plans with the Register of Copyrights under registration numbers Vau1-073-551 (architectural work) and Vau1-073-656 (architectural drawings).  Compl. ¶ 22, ECF No. 1; Donegan Aff. ¶ 7.  Thus, any alleged infringement occurred prior to copyright registration.  On March 26, 2013, Plaintiff filed the instant suit alleging copyright infringement, misappropriation and unjust enrichment, and unfair competition against Rich & Gardner.  *See generally* Compl., ECF No. 1.  On November 27, 2013, the Court granted Rich & Gardner's motion for judgment on the pleadings thus dismissing all of Plaintiff's claims against Rich & Gardner save for copyright infringement, and dismissing Plaintiff's claims for statutory damages, attorneys' fees, and punitive damages.  Memorandum and Decision, ECF No. 59.  The only claim remaining against Rich & Gardner is for copyright infringement.  *See id.*

**ARGUMENT**

## I.    Standard on a Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court "construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in [its] favor." *Amore v. Novarro*, 624 F.3d 522, 529 (2d Cir. 2010).  "If the movant satisfies its burden, the nonmoving party must offer specific evidence showing that a genuine issue of material fact warrants a trial."  *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011) *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012) (citing *Celotex Corp. v. Catrett,* 417 U.S. 317, 324 (1986)). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg*., 156 F.3d 396, 400 (2d Cir. 1998).  "[I]n the case of architectural works . . . summary judgment is often more reliabl[e] and accurate . . .  [because the] judge is better able to separate original expression from the non-original elements of a work where the copying of the latter is not protectable and the copying of the former is protectable." *Zalewski v. T.P. Builders, Inc*., 875 F. Supp. 2d 135, 142 (N.D.N.Y. 2012) (internal quotation marks and citation omitted).

## II.    RICH & GARDNER DID NOT INFRINGE THE BUTTNER PLANS VIA REPRODUCTION OR THE CREATION OF THE RICH & GARDNER PLANS.

In its memorandum, Plaintiff appears to accuse Rich & Gardner of committing copyright infringement in two ways: (1) by reproducing the Buttner 2008 Plans by making a photocopy; and (2) by drafting the Rich & Gardner Plans.  Plaintiff fails to demonstrate either claim as a matter of law, and Rich & Gardner demonstrates that it is entitled to a declaration of non-infringement.

**A.      Rich & Gardner Did Not Infringe the Buttner Plans By Making a Photocopy.**

Plaintiff first accuses Rich & Gardner of infringing the Buttner 2008 Plans by reproduction via making a photocopy of the Buttner 2008 Plans.  Pl.'s Mem. of Law at Section I.B.i, ECF No. 77–4.  Plaintiff's dubious proof in support of this notion is that because Plaintiff provided Mr. Palmer with only one original, red-stamped copy of the Buttner 2008 Plans, and because both Mr. Palmer and Rich & Gardner were able to produce black and white copies of the same in discovery, one of them must have made a copy.  First of all, merely stating that one of two parties infringed but not being able to identify the party that actually infringed does not establish entitlement to judgment as a matter of law as to either party.  Second, Plaintiff's claim as against Rich & Gardner fails because Plaintiff asserts right in its Statement of Material Facts that Rich & Gardner produced the original copies of the red-stamped Buttner 2008 Plans.  Pl.'s Statement of Material Fact ¶ 13, ECF NO. 77–1; Buttner Dep. Vol. II at 217:17-218:2.  Because Rich & Gardner was able to produce the originals, Plaintiff has no basis whatsoever for claiming that Rich & Gardner made a photocopy.  That is, unless, Plaintiff somehow claims that making an electronic copy of a document in response to a discovery request constitutes infringement.

It is beyond dispute that creation and production of documents in the course of a litigation in response to discovery demands is not copyright infringement or, at a bare minimum, a fair use.  *See, e.g.*, *Hollander v. Steinberg*, 419 F. App'x 44, 46–48 (2d Cir. 2011) (finding that submission of copyrighted essays during a judicial proceeding constituted fair use).  Further, Plaintiff's Document Request No. 15 demanded that Rich & Gardner produce "any and all copies of . . . [Plaintiff's] Drawings and Plans."  Muldoon Decl. Ex. Y at No. 15 (emphasis added).  How could Plaintiff request "copies" of his drawings in Rich & Gardner's possession

then turn around and assert that the alleged making of any such copy constitutes copyright infringement? In fact, if this is the case, Plaintiff himself might be guilty of copyright infringement as he produced copies of the Rich & Gardner drawings as part of his document production. Muldoon Decl. ¶ 28. The simple fact is that Rich & Gardner never made a copy of the Buttner 2008 Plans aside from an electronic copy during the course of this litigation pursuant to its discovery obligations. Donegan Aff. ¶ 4. The documents bearing Bates Nos. RG00001244 and RG00001245 attached to Plaintiff's motion as part of Exhibit 4 are electronic copies of the red-stamped original drawings provided to Rich & Gardner by Mr. Palmer. Donegan Aff. ¶ 113. A copy of these documents were shared by email early in the litigation with co-defendants' counsel as part of informal discovery among the defendants. *See* Muldoon Decl. ¶ 24, Ex. W.

Plaintiff's only proof aside from the indirect evidence dispelled above is Mr. Palmer's testimony that Rich & Gardner made a copy of the Buttner 2008 Plans. Pl.'s Mem. of Law at 11, ECF No. 77–4. Plaintiff, however, neglects to inform the Court that thereafter, when asked how he knew that Rich & Gardner made copies, Mr. Palmer responded, "I don't know what they did, other than they had to have something to go by." Palmer Dep. 36:19-25. This was presumably based on Mr. Palmer's mistaken impression that Rich & Gardner gave the original Buttner 2008 Plans back to him. *Id.* at 36:3-13. The fallacy of this is demonstrated by Plaintiff's concession that Rich & Gardner was able to produce the original Buttner 2008 Plans, Pl.'s Statement of Material Fact ¶ 13, ECF NO. 77–1, and, in fact, Rich & Gardner has been in possession of the original Buttner 2008 Plans since Mr. Palmer provided them, Donegan Aff. ¶ 113.

Accordingly, Plaintiff offers no direct evidence whatsoever and only easily dispelled circumstantial evidence, and in so doing fails to demonstrate as a matter of law that Rich & Gardner committed copyright infringement by making a photocopy or literal copy of the Buttner

2008 Plans. Correspondingly, Rich & Gardner has demonstrated sufficient evidence to entitle it to a declaration that it did not infringe the Buttner Plans by making a literal reproduction.

**B.** **Rich & Gardner Did Not Infringe the Buttner Plans in Drafting the Rich & Gardner Plans.**

Plaintiff fails to adduce sufficient evidence to meet the burden on summary judgment to establish substantial similarity between the Buttner Plans and the Earliest Rich & Gardner Plans. Importantly, Plaintiff is required to demonstrate near identity, or at least substantial similarity, between the Earliest Rich & Gardner Plans and the entirety of the Buttner Plans, which include several admittedly dissimilar architectural works. Further, even when only considering the Buttner 2008 Plans, the facts that virtually every element of said plans is unprotectable and that there are significant differences between the plans preclude a finding of near identity.

**1.** **Plaintiff Must Demonstrate "Near Identity" Between the Works.**

To establish copyright infringement on a motion for summary judgment, a plaintiff must establish as a matter of law that: "(1) the defendant has actually copied the plaintiffs' work; and (2) the copying is illegal because a substantial similarity exists between the defendants' work and the *protectible elements* of plaintiffs.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (emphasis added). Additionally, the amount copied must be "more than de minimus." *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003). To determine whether works are substantially similar, courts apply the "ordinary observer" test, which queries whether an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Gaito Architecture*, 602 F.3d at 66 (internal quotations and citation omitted). When works contain both protectable and unprotectable elements, courts in the Second Circuit apply a "more discerning" test under which courts "must attempt to extract the unprotectible elements

from . . . consideration and ask whether the *protectible elements, standing alone* are substantially similar." *Knitwaves, Inc. v. Lollytags Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (emphasis in original). A work composed entirely of unprotectable elements may still be entitled to copyright protection, but only in the selection, arrangement, and coordination of the unprotected elements. *See Zalewski*, 875 F. Supp. 2d at 147–48 (citing *Gaito Architecture*, 602 F.3d at 66).

However, when copyright protection in an architectural work is limited to the "arrangement and composition of unprotected elements," the Northern District of New York has held that the scope of protection is "narrow" or "thin" and that a plaintiff must demonstrate "something akin to '*near identity*' between the works." *Zalewski*, 875 F. Supp. 2d 147–48 (emphasis added); *see also id.* ("[I]f substantial similarity is the normal measure required to demonstrate infringement, 'supersubstantial' similarity must pertain when dealing with works subject to only 'thin protection.'") (quoting 4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 13.03[A][4] (Matthew Bender, Rev. Ed.)); *Beaudin v. Ben & Jerrys' Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996) ("Where the quantum of originality is slight and the resulting copyright is 'thin', infringement will be established only by very close copying . . . "). The Western District of New York has joined the Northern District in holding that were copyright protection in an architectural work is thin, a "finding of infringement must be predicated upon 'very close copying' or 'virtual identity.'" *N. Forest Dev., LLC v. Walden Ave. Realty Assocs.*, No. 06-cv-00378(A)(M) 2009 WL 5959961, at *6 (W.D.N.Y. July 22, 2009) [1]

---

[1] Other Circuit and District Courts have noted the "thin" scope of protection afforded to architectural works and required a heightened standard of substantial similarity. *See, e.g.*, *TransWestern Pub. Co. LP v. Multimedia Mktg. Assocs., Inc.*, 133 F.3d 773, 776 (10th Cir. 1998) (supersubstantial similarity required); *Trek Leasing, Inc. v. United States*, 66 Fed. Cl. 8, 19 (Fed. Cl. 2005) (nearly verbatim copying or a showing of "supersubstantial similarity" is required); *Intervest Const., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 919 (11th Cir. 2008) (noting "thin" scope of copyright protection); *Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC*, 716 F. Supp. 2d 428, 438 (E.D. Va. 2010) ("As such, the copyright protection in architectural works, as with traditional compilations, is necessarily 'thin.'").

Examples of elements of architectural works that are unprotectable and excluded from the infringement analysis include: (1) "[s]tandard configurations of spaces," 37 C.F.R. § 202.11(d)(2); (2) "individual standard features," *id*.; (3) elements dictated by market forces; (4) elements dictated by functional or utilitarian concerns; (5) elements dictated by regulations and building codes; and (6) "features that are essential or common to the architectural style within which the builder designed the structure," *Zalewski*, 875 F. Supp. 2d at 145 (citation and quotation marks omitted).

      **2.**    **Plaintiff Fails to Adduce Sufficient Evidence to Meet the *Prima Facie* Burden of Demonstrating Copyright Infringement.**

Plaintiff bears the *prima facie* burden of establishing entitlement to summary judgment with regard to each element of its copyright infringement allegation. *Wagner*, 827 F. Supp. 2d at 92. This requires Plaintiff to demonstrate as a matter of law that the Rich & Gardner drawings are nearly identical, or at a bare minimum, substantially similar to the Buttner Plans. The sum total of Plaintiff's evidence on this point is: (1) a proposal incorporated by the Palmer-Rich & Gardner Contract states that it is "based on" the Buttner 2008 Plans and that Mr. Small testified that he "referred" to the Buttner 2008 Plans in drafting the Earliest Rich & Gardner Plans; (2) the Palmer-Rich & Gardner Contract states that the "drawings" include the Buttner 2008 Plans; (3) the Earliest Rich & Gardner Plans are dated two days after the Palmer-Rich & Gardner Contract was signed; and (4) a citation to a demonstrative exhibit portraying poor quality reproductions of a portion of the Earliest Rich & Gardner Plans and the Buttner 2008 Plans, which obscures the significant differences between them. Pl.'s Mem. of Law at 17, ECF No. 77–4.

First, the fact that proposal attached to the Palmer-Rich & Gardner Contract states that it is "based on" the Buttner Plans and Mr. Small referred to the Buttner Plans in drafting the Earliest Rich & Gardner Plans is of no matter. Virtually every architectural work is "based on"

some other architectural work, and the Second Circuit has expressly held that simply because a work is "based upon" another, which does mean that the junior work is infringing:

> even when one work is "*based upon*" another, if the secondary work sufficiently transforms the expression of the original work such that the two works cease to be *substantially similar* (emphasis in original), then the secondary work is not a derivative work and, for that matter, does not infringe the copyright of the original work.

*Well-Made Toy Mfg. Corp v. Goffa Int'l Corp.*, 354 F.3d 112, 117 (2d Cir. 2003) (emphasis added), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). Further, the "based on" language is from a proposal dated September 9, 2009, which is over a year before the Earliest Rich & Gardner Drawings' date of September 15, 2010. Pl.'s Statement of Material Fact ¶¶ 14, 16, ECF No. 77–1. Contractual language written before an allegedly infringing work was created cannot demonstrate substantial similarity (or near identity); substantial similarity is determined by comparing the protectable elements of two works. *Gaito Architecture*, 602 F.3d at 66. Additionally, Mr. Buttner authorized and permitted Mr. Palmer to use the Buttner Plans to seek quotes from contractors for the Station Project. *See* Buttner Dep. Vol. II. 216:21-217:2. This is precisely what Mr. Palmer did.

Second, and likewise, the fact that the Palmer-Rich & Gardner Contract, which is dated before the earliest Rich & Gardner Drawings, states that the "Drawings" are the Buttner 2008 Plans, Pl.'s Statement of Material Fact ¶¶ 18–19, ECF No. 77–1, is insufficient to meet Plaintiff's *prima facie* burden of demonstrating similarities between the works. Third, the two day gap between the date of the Palmer-Rich & Gardner Contract and the earliest Rich & Gardner Drawings proves nothing. Plaintiff's billing records to Defendant Palmer indicate that the Buttner 2008 Plans were created in less than eight hours. Muldoon Decl. Ex. V. Two days

of time are more than sufficient to create a work that is not substantially similar to another work, and in fact, a sufficiently dissimilar work could be created in significantly less time.

Fourth, Plaintiff provides no evidence of actual near identity or substantial similarity aside from an unannotated side-by-side comparison of the Buttner 2008 Plans and the earliest Rich & Gardner Plans. As discussed *infra* in Section II.13.3, the relevant comparison is between the entirety of the Buttner Plans as contained in the deposit materials, not just the Buttner 2008 Plans. Plaintiff is not permitted to pick and choose from amongst the deposit materials to select only the portion that is the most similar to the accused work. Moreover, Plaintiff does not discuss any similarities between the works whatsoever or eliminate, as required by the Second Circuits "more discerning ordinary observer" test, any unprotectable elements. As described *infra* in Section II.13.4, there are many differences between the works and many elements of the Buttner 2008 Plans that are unprotectable, and yet Plaintiff addresses neither. Accordingly, the above-described evidence is not sufficient to meet Plaintiff's *prima facie* burden to establish near identity or at least substantial similarity as a matter of law.

3. **The Rich & Gardner Plans are Not Substantially Similar to the Buttner Plans as a Whole.**

Plaintiff focuses his copyright infringement allegations on the alleged similarities between a small portion of the Buttner Plans, i.e., the Buttner 2008 Plans, and the Earliest Rich & Gardner Plans. This is not the correct comparison. Courts are to compare the "total concept and feel" of copyrighted works, *Gaito Architecture*, 602 F.3d at 66, and here the copyrighted work is the Buttner Plans, i.e., the deposit materials for the copyright registrations that form the basis of this suit. These deposit materials are comprised of eight site plans, two floor plans and four elevations. The Northern District of New York has adopted the reasoning that the correct comparison is between the entirety of the works, not just a portion:

> This includes plaintiffs' claim that although the entire design was not copied in the accused home, individual floor plans or elevation views were. Because the substantial similarity analysis here concerns the "total concept and overall feel" of plaintiffs' works, *it is insufficient to demonstrate that a single component of the design, such as an individual floor plan or elevation view, has been copied*.

*Zalewski*, 875 F. Supp. 2d at 153 n.22 (citation omitted and emphasis added). In other words, Plaintiff is not permitted to pick and choose only the portions of the Buttner Plans that are allegedly the most similar. This notion is further underscored by 37 C.F.R. § 202.11(c)(2), which governs the registration of architectural works and states that "a single application may cover only a single architectural work." *Id.* Because each registration is meant to cover only a single architectural work, the entirety of the single architectural work can be easily compared to the accused architectural work.

A comparison between the entirety of the Buttner Plans and the Earliest Rich & Gardner Drawings reveals no near identity or substantial similarity. First, Rich & Gardner did not draft any site plans and as such its drawings are not similar to the eight Buttner Site Plans. Moreover, the buildings depicted in the Buttner Site Plans are either simple rectangles not entitled to copyright protection as standard configurations of space, *see* 37 C.F.R. 202.11(c)(2), or wildly dissimilar to the building depicted in the Rich & Gardner Plans. Muldoon Decl. Ex. C. For example, while the Rich & Gardner Plans depict an approximately 2,600 square foot rectangular, free-standing building, Buttner Site Plans B1 and B1a depict a building that is partially under a pre-existing fuel canopy; Buttner Site Plan B2 depicts a trapezoidal building; Buttner Site Plan B3 depicts a 3,024 square foot building; Buttner Site Plan B4 depicts a 2,880 square foot building; and so on. *See* Muldoon Decl. Ex. C. Only Buttner Site Plan B4a is even arguably similar to the Earliest Rich & Gardner Drawings, but it is merely a rectangle not protectable pursuant to 37 C.F.R. § 202.11(c)(2). Further, Buttner Site Plan B4a does not depict Dutch

Gable roofs and it depicts the reverse gables over the main entrance and drive through window as shifted towards the north side of the building. *See* Muldoon Decl. Ex C at B4a. The Earliest Rich & Gardner Plans, on the other hand, depict Dutch gables and the reverse gables over the main entrance and drive through window as essentially centered. Donegan Aff. ¶ 77; Muldoon Decl. Ex. F.

Second, the Buttner 2006 Plans are entirely dissimilar to the Rich & Gardner Plans. *Cf. See* Muldoon Decl. Ex. J (Deposition of Brian Buttner dated Dec. 16, 2013 ("Buttner Dep. Vol. I") at 197:25-198:5 (Plaintiff affirmatively testified that the Buttner 2006 Plans are not infringed by the Station As-Built). The Buttner 2006 Plans depict a large, approximately 3,000 square foot building, with hip roofs, no circular gable vent, two cupolas, three skylights, Exterior Insulation and Fiber System siding, three polygonal windows above the main entrance, door sized windows to either side of the main entrance, and canopies supported by columns and pedestals over both the main entrance and the drive through window. *See* Muldoon Decl. Ex. O. The Earliest Rich & Gardner Plans depict a much smaller approximately 2,600 square foot building with Dutch gable roofs, a circular gable vent, one cupola, no skylights, clapboard siding, one polygonal window over the main entrance, no door sized windows to either side of the main entrance, and no canopies over the main entrance or drive through window, supported by columns and pedestals or otherwise. Muldoon Decl. Ex. F.

This leaves only a small portion of the Buttner Plans, i.e., the Buttner 2008 Plans, that is even arguably similar to the Rich & Gardner Plans. Put differently, of the eight site plans included in the Buttner Plans, none are similar; of the two floor plans included in the Buttner Plans, only one is arguably similar, and of the four elevation drawings included in the Buttner Plans, only two are arguably similar. This standing alone demonstrates that Plaintiff has failed to

demonstrate substantial similarity as a matter of law, and is sufficient to prove that Rich & Gardner is entitled to a declaration of non-infringement.[2]

### 4. The Elements of the Buttner Plans are Virtually All Unprotectable.

The Second Circuit's "more discerning" ordinary observer test compares only the *protectable* elements of works, *Knitwaves, Inc.*, 71 F.3d at 1002, and the vast majority of the elements depicted in the Buttner Plans are unprotectable. To start, the building or buildings depicted in the Buttner Plans are not groundbreaking architectural works. To the contrary they depict what is, at base the simplest architectural design possible, a single story, rectangular building. As discussed *supra* in Section II.B.1, unprotectable elements of architectural works include: (1) "[s]tandard configurations of spaces," 37 C.F.R. § 202.11(d)(2); (2) "individual standard features," *id.*; (3) elements dictated by market forces; (4) elements dictated by functional or utilitarian concerns; (5) elements dictated by regulations and building codes; (6) "features that are essential or common to the architectural style within which the builder designed the structure," *Zalewski*, 875 F. Supp. 2d at 145 (citation and quotation marks omitted); and (7) structures other than buildings, i.e., features external to buildings are excluded from copyright protection, 37 C.F.R. 202.11(d)(1). While the major points are covered below, a more comprehensive listing of the unprotectable elements of the Buttner Plans with detailed citations to admissions by Plaintiff can be found in Paragraphs 244–269 of Rich & Gardner's Omnibus Statement of Material Facts and the Donegan Declaration at Paragraphs 79–103.

First, many elements of the Buttner Plans were dictated by market forces, i.e., the demands of consumers that would patronize the Station and the demands of Mr. Palmer, who was, in effect, the literal market for Plaintiff's architectural services and an external source of

---

[2] As discussed *infra* in Sections II.B.5-6 there are also significant differences between just the Buttner 2008 Plans and the Rich & Gardner Plans which add to and bolster the contention that the works as a whole are not substantially similar.

design choices.  *See, e.g.*, *Trek Leasing, Inc*, 66 Fed. Cl. at 17 ("[T]here are many aspects of Plaintiff's copyrighted work that are not deserving of copyright protection, since most of the elements Plaintiff used in designing the Fort Defiance Post Office were dictated by . . . external factors.").  For example, it was Mr. Palmer that instructed Mr. Buttner to create a rectangular stand-alone building, to divide it roughly in half between the two stores, to place the Dunkin' Donuts store closer to the road, to use a centrally located checkout counter, to place an office in the front of the building, to use a stonework-covered water table along the bottom of the building, to reuse the cooler door fronts from the prior station, and to include a drive through window.  Palmer Dep. at 57:11-22, 62:15-18,62:22-63:2, 65:6-66:2, 69:15-21, 72:2-15; Buttner Dep. Vol. I at 20:15-22, 21:15-20.  Likewise, consumer demand dictated the placement of customer seating near the windows.  Buttner Dep. Vol. I at 202:1-7; Palmer Dep. at 76:16-77:10. As such, these elements are excluded from the infringement analysis.

Second, many elements of the Buttner Plans were dictated by functional or utilitarian concerns.  For example, the placement of the building, *see* Buttner Dep. Vol. II at 275:15-18, the decision to have one common entrance for both stores, *see* Buttner Dep. Vol. I at 200:20-201:8, the placement of the convenience store's office in the front of the building for visual access to the fuel pumps, *see* Buttner Dep. Vol. I at 198:21-199:10, the placement of the restrooms next to one another and in the back of the convenience store, *see* Palmer Dep. at 17:8-12; Pl.'s Resp. to RFA No. 4, the placement of dry and cold storage along the exterior walls of the convenience store, *see* Palmer Dep. at 67:22-25, and the placement of food preparation and the drive through area on the wall facing the drive though lane, *see* Pl.'s Resp. to RFA No. 14, were all dictated by functional or utilitarian concerns and are excluded from the infringement analysis.

Third, several key elements of the Buttner Plans are common to a common architectural style, i.e., Colonial architecture. Such elements include the use of Dutch gable roofs, *see* Pl.'s Resp. to RFA No. 38, reverse gables over windows and entrances, *see* Pl.'s Resp. to RFA No. 40, cupolas, *see* Donegan Aff. ¶ 9, and the use of columns on either side of the main entrance, *id*, ¶ 10. As such, these elements should be excluded from the infringement analysis.

Fourth, there are multiple standard configurations of space depicted in the Buttner Plans. Pictures taken of standard configurations of space in gas stations Mr. Buttner admittedly visited as research for the Buttner Plans are attached to the Muldoon Declaration as Exhibit S. Most importantly, the rectangular shape of the building, the division of the building into two halves, and the use of Dutch gable roofs are standard configurations of space. *See Greenberg v. Town of Falmouth*, No. Civ.A 04-11934-GAO, 2006 WL 297225 at *3–4 (D. Mass. Feb. 8, 2006) ("[B]asic geometric shapes are not, in and of themselves, sufficiently original to warrant copyright protection."); *N. Forest Dev., LLC*, 2009 WL 5959961, at *5 ("[T]here are only a finite number of ways a rectangle can be divided . . . .") (citation and quotation marks omitted). Further, the central placement of the checkout counter, *see* Donegan Aff. ¶ 13; Muldoon Decl. Ex. S at Section I, the slope of the roof hip lines, Donegan Aff. ¶ 16; the placement of customer seating next to windows, *see* Palmer Dep. at 76:16-77:10; Muldoon Decl. Ex. S at Section II, the use of a common entrance for two stores, *see* Donegan Aff. ¶ 17; Muldoon Decl. Ex. S at Section III, and the placement of coolers and cold storage along exterior walls, *see* Palmer Dep. at 64:19-22; Buttner Dep. Vol. I at 159:5-10; Muldoon Decl. Ex. S at Section IV, are all standard configurations of space and are excluded from copyright protection.

Fifth, the elements of the buildings depicted the Buttner Plans are all individual standard features. This includes the windows – both rectangular and polygonal, doors, siding, gables,

bays, cupolas, skylights, vents, canopies, columns, pedestals, and roof panels. *See* Donegan Aff.

¶¶ 19-29; *see also* 37 C.F.R. 202.11(d)(2) (windows and doors are individual standard features);

*N. Forest Dev.,* 2009 WL 5959961, at *5 (offices along outer walls, placement of mechanicals

and plumbing near center of building, and placement of food preparation areas and lavatories

near plumbing are individual standard features or standard configurations of space), *Rottlund*

*Co., Inc. v. Pinnacle Corp.*, No. Civ. 01-1980 DSD/SRN, 2004 WL 1879983, at *14 (D. Minn.

Aug. 20, 2004) (gabled entries are individual standard features); *Nelson-Salabes Inc. v.*

*Morningside Holdings*, No. Civ.B-98-2226, 2001 WL 419002, at *4 (D. Md. Feb. 16, 2001) (bay

windows are individual standard features); *vacated in part on other grounds* by 284 F.3d 505

(4th Cir. 2002). All of these individual elements should be excluded from copyright protection.

Likewise, the 45° angle jog in the dividing wall between the convenience store and the Dunkin'

Donuts in the Buttner Plans is an individual standard feature excluded from the substantial

similarity analysis. *See Greenberg*, 2006 WL 297225 at *3–4 (holding that the use of 45° angled

walls should be left out of the substantial similarity analysis).

Sixth, many elements of the Buttner Plans were dictated by regulations, codes, or official

Dunkin' Donuts specifications. For example, the use and placement of emergency exits, *see*

Pl.'s Resp. to RFA No. 25, the width and swing of entry doors, the height of the ceiling, the

configuration of the restrooms, the placement of tobacco products, and the arrangement and

location of equipment in the Dunkin' Donuts portion of the Buttner Plans were all dictated by

government regulations or Dunkin' Donuts specifications, *see* Pl.'s Resp. to Interrog. No. 8, and

are excluded from the infringement analysis.

Seventh, and finally, many elements of the Buttner Plans are external to the buildings

depicted. For example, the retaining wall, the parking areas, the driveways, the drive through

lanes, the landscaping, the sidewalks, and the fuel canopy are all external to the building and are excluded from copyright protection pursuant to 37 C.F.R. 202.11(d)(1). *See* Muldoon Decl. C-E. All of these features of the Buttner Plans should be excluded from copyright protection, and yet none are addressed in Plaintiff's motion for summary judgment.

> ### 5. Given the Thin Protection Afforded the Buttner Plans, the Rich & Gardner Plans are Not Nearly Identical or Substantially Similar to Even Only the Buttner 2008 Plans.

Even if the Court were to only consider the alleged similarities between the just the Buttner 2008 Plans and the Rich & Gardner Plans, the two are not nearly identical. Because, as described *supra* in Section B.II.4, virtually all of the elements of the Buttner Plans are unprotectable, the scope of protection in the Buttner Plans is limited to the way in which these elements are arranged. *Zalewski*, 875 F. Supp. 2d 147–48; *N. Forest*, 2001 WL 419002, at *4–6. When copyright protection is limited to the way in which unprotectable elements are arranged, the scope of protection is thin and "something akin to near identity" must be demonstrated. *Id.*

Here, there are several important distinctions between the Earliest Rich & Gardner Plans, *see* Muldoon Aff. Ex. F, and just the Buttner 2008 Plans portion of the Buttner Plans, which are comprised of the Buttner 2008 Floor Plan, the Buttner 2008 South Elevation, and the Buttner 2008 East Elevation, *see* Muldoon Decl. Ex. E. *See Attia v. Soc'y of the New York Hosp.*, 201 F.3d 50, 58 (2d Cir. 1999). Critically, the main entrance and the dividing wall between the convenience store and the Dunkin' Donuts has been shifted from the right side of the building in the Buttner 2008 Floor Plan to the center of the building in the Earliest Rich & Gardner Plan.[3]

---

[3] In Plaintiff's Exhibit 9, which contains side-by-side depictions of the Buttner 2008 Plans and the Earliest Rich & Gardner Plans, rather than lining up the floor plans, Plaintiff moved the Rich & Gardner floor plan on the bottom to the right so that the main entrances of two floor plans align. Pl.'s Ex. 9 at 2, ECF No. 77–13. If right and left exterior walls are lined up, as they should be, the shifting of the main entrance/dividing wall and the accompanying changes are more evident. This can be seen in Exhibit B to the Muldoon Declaration, which has a more clear depiction of the comparison between just the Buttner 2008 Plans and the Earliest Rich & Gardner Plans.

*See id.* This shift from right to left necessitated that the dimensions of the convenience store portion of the Rich & Gardner Drawings increase and the dimensions of the Dunkin' Donuts portion of the Rich & Gardner Drawings decrease. The change in dimensions consequently changed the interior architecture of each portion as well as the locations of various doors, windows, and the drive through service station. When Plaintiff was asked what would happen if he were asked to redraw the Buttner 2008 Plans to shift the main entrance and dividing wall to the left as depicted in the Rich & Gardner Plans, he responded that making that change would "take a longer time frame," and that "because when this moves, then *all of this* [indicating the Dunkin' Donuts area] *has to move as well*." Buttner Dep. Vol. I at 283:12-284:24 (emphasis added). The shift would also would "change[] the relationship and the flow of people in the space inside the building." Mr. Buttner further testified that by moving the dividing wall, all of the Dunkin' Donuts space "has to move as well." *Id.* When asked how long it would take him to make the changes required by moving the entrance/dividing wall to the left/south, Plaintiff responded that it would take the "better part of three days, maybe four days." *Id.* The simple fact that it would take Plaintiff three to four full workdays, at eight hours a day, to make the changes to get from the Buttner 2008 Plans to the Earliest Rich & Gardner Plans speaks volumes as to the differences between the two. The dimensional and spacing differences caused by the shifting of the main entrance/dividing wall can be seen in Exhibit B to the Muldoon Declaration which shows how the interior architecture of the convenience store expanded and the interior architecture of the Dunkin' Donuts has contracted as compared to the Buttner 2008 Floor Plan.

There are numerous other more specific differences between the Buttner 2008 Plans and the Earliest Rich & Gardner Plans that show that even the selection and arrangement of unprotectable elements is dissimilar. While the prominent differences are discussed below, a

more comprehensive list with citations to the record can be found in Section IV.B of Rich & Gardner's Omnibus Statement of Material Facts, and side-by-side depictions of the plans with arrows pointing out differences between the two is attached to the Muldoon Declaration as Exhibit B. Prominent differences include the following:

| Buttner 2008 Plans | Earliest Rich & Gardner Plans |
|---|---|
| Depicts a canopy extending off the back of the station all the way over the drive through lane supported by intricate columns and pedestals. | Depicts no canopy over the drive through lane and only a slight overhang.[4] |
| Depicts three skylights over the Dunkin' Donuts portion, necessitating a vaulted ceiling. | Depicts no skylights and thus no vaulted ceiling over the Dunkin Donuts' portion.[5] |
| The right side of the Buttner 2008 side elevation shows depicts a stonework-covered column on either side of the main entrance that extend out past the front exterior wall line. | Depicts no columns on either side of the main entrance extending past the front exterior wall line.[6] |
| Depicts a mechanical loft containing equipment over the convenience store. | Depicts no mechanical loft and the mechanical equipment was to be located outside.[7] |
| Depicts EIFS stucco-like siding. | Depicts clapboard siding.[8] |
| Depicts rectangular stones in the stonework-covered areas. | Depicts round stones in the stonework-covered areas.[9] |
| Buttner 2008 Front and Side Elevations depict a continuous horizontal mullion/trim line running around the building. | Depicts no such continuous mullion/trim line.[10] |
| Buttner 2008 Side Elevation depicts stonework under the windows in the bay and running up both sides of the bay. | Depicts no stonework under the bay and no stonework running up the sides of the bay.[11] |
| Depicts a stone water table and mullion/trim line on all four sides of the building. | Depicts no stone work or mullion/trim line on either the back or right side. |
| Left side of the Buttner 2008 Side Elevation depicts a stonework column on either side of the drive through window extending only slightly past the rear exterior wall line. | Depicts no columns on either side of the drive through window and instead depicts the drive through window area itself extending out significantly from the rear exterior wall line with only clapboard siding.[12] |

---

[4] *See* Donegan Aff. ¶ 79; Muldoon Decl. Ex. B, E, F.
[5] *See* Donegan Aff. ¶ 81; Muldoon Decl. Ex. B, E, F.
[6] *See* Donegan Aff. ¶ 91; Muldoon Decl. Ex. B, E, F.
[7] *See* Donegan Aff. ¶ 82; Muldoon Decl. Ex. B, E, F.
[8] *See* Donegan Aff. ¶ 84; Muldoon Decl. Ex. B, E, F.
[9] *See* Donegan Aff. ¶ 85; Muldoon Decl. Ex. B, E, F.
[10] *See* Donegan Aff. ¶ 86; Muldoon Decl. Ex. B, E, F.
[11] *See* Donegan Aff. ¶ 253, 255; Muldoon Decl. Ex. B, E, F.
[12] *See* Donegan Aff. ¶ 256; Muldoon Decl. Ex. B, E, F.

One of the main differences is the fact that the canopy depicted in the Buttner 2008 Plans that extends over the drive through lane and is supported by ornate columns and pedestals is simply not present in the Earliest Rich & Gardner Plans. Plaintiff testified that the canopy was the "most dominant architectural feature on the back side." Buttner Dep. Vol. I at 188:9-21.

Thus, even if the Court were to consider only the Buttner 2008 Drawings, based on the Plaintiff's testimony regarding the significant changes that resulted from the shifting of the main entrance/dividing wall as well as all the differences listed above, Plaintiff has failed to demonstrate as a matter of law the Earliest Rich & Gardner Drawings are nearly identical to the Buttner 2008 Plans. Likewise, the differences referenced above entitle Rich & Gardner to summary judgment on its claim for a declaratory judgment of non-infringement.

> **6.  The Earliest Rich & Gardner Plans are Not Substantially Similar or Nearly Identical to the Buttner Plans.**

For the reasons stated above, the Earliest Rich & Plans are not substantially similar or nearly identical to the Buttner Plans. For one, the Earliest Rich & Gardner Plans should be compared to the entirety of copyright deposit materials, i.e., the Buttner 2006 Plans, the Buttner 2008 Plans, and the Buttner Site Plans, the vast majority of which Plaintiff concedes is dissimilar to the Earliest Rich & Gardner Plans. Moreover, Rich & Gardner has identified a veritable bevy of differences between the plans demonstrating that even the selection and arrangement of unprotectable elements differs. While the plans have some features in common, these features are only similar at the unprotectable level of ideas and not at the protectable level of expression. *Gaito Architecture*, 602 F.3d at 68–69 ("[T]he various components and features that defendants allegedly misappropriated are generalized concepts and ideas that are common to countless other urban high-rise residential development.") (internal quotation marks and citation omitted). Further, these general similarities "can be attributed to the fact that both plaintiffs' and

defendants' works are heavily influenced by, and incorporate hallmark features of, Colonial architecture." *Zalewski*, 875 F. Supp. 2d at 153. Here, "[a]ny remaining similarities, of which there are few, are de minimus in light of the vast dissimilarities between the works." *Id.*; *Tufenkian*, 338 F.3d at 131 (amount copied must be "more than de minimus").

## III.   EVEN IF THE RICH & GARDNER PLANS ARE FOUND TO INFRINGE, THE DAMAGES ARE MINIMAL.

The Court has already granted Rich & Gardner's motion for partial judgment on the pleadings eliminating any right of Plaintiff to statutory damages, punitive damages, or attorneys' fees. Thus, Plaintiff's potential recovery is limited only to actual damages and disgorged profit attributable to the infringement. Even if the Court were to find that the Rich & Gardner Plans infringe the Buttner Plans, the actual damages would be minimal because they cannot be based on a contractual remedy or based on the construction of the Station As-Built.

### A.   Damages for Copyright Infringement Are Not Calculated Using Contractual Measures of Damages, Especially With Regards to a Contract to Which Rich & Gardner Was Not a Party.

Even if the Court were to find that the Earliest Rich & Gardner Plans infringed the Buttner Plans, actual damages for copyright infringement cannot be awarded against Rich & Gardner based on a contract between Plaintiff and Mr. Palmer. Pursuant to 17 U.S.C. § 504(b), a prevailing plaintiff in a copyright infringement suit is entitled to recover "actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). In response to Rich & Gardner's Interrogatory Nos. 18 and 19, which queried Plaintiff's basis and amount of "actual damages" for copyright infringement, Plaintiff responded that its actual damages are $56,303.58. Muldoon Decl. Ex. O at Resp. to Interrog. Nos. 18, 19. Plaintiff calculated this figure using a clause in the Buttner-Palmer Contract that

entitled Mr. Buttner to a percentage of construction costs should he be retained to oversee construction of the Station. *Id.*; Muldoon Decl. Ex. R at Section C.1. In other words, Plaintiff seeks to be placed in the same position he would have been had that contract been performed, i.e., the typical contractual measure of damages. *Seidman v. Indus. Recycling Props., Inc.*, 106 A.D.3d 983, 985 (2d Dep't 2013).

In *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1117-18 (2d Cir. 1986), the Second Circuit reversed as plain error a district court's ruling that based an award of actual damages for copyright infringement on a contractual measure of damages that would have placed the plaintiff in the same position it would have been in had a contract been performed. *Id.* The Second Circuit held basing damages for copyright infringement upon a contractual measure of damages was error and that the trial court should have applied the measure of damages set forth in 17 U.S.C. § 504(b). "Failure to apply this measure in weighing actual damages requires reversal." *Fitzgerald*, 807 F.2d at 1117–18. Additionally, and importantly, in *Fitzgerald*, the contract upon which damages were erroneously based was at least a contract to which the copyright owner/plaintiff and accused infringer/defendant were each a party. *Id.* Here, in contrast, Plaintiff seeks to enforce a contractual measure of damages against Rich & Gardner based on a contract to which Rich & Gardner was not a party[13] and that was signed approximately three years before Rich & Gardner was ever even involved in the project. *See* Muldoon Decl. Ex. R (Buttner-Palmer Contract signed March 14, 2006). Rich & Gardner cannot be held to the terms of a contract to which it is not a party and of which it had no knowledge until multiple years after the fact.

---

[13] Plaintiff has alleged a separate breach of contract claim against Mr. Palmer that is not at issue with regard to this motion and cross motion. *See* Compl. ¶¶ 39–43, ECF No. 1–1.

Accordingly, Rich & Gardner seeks an order from the Court that Plaintiff may not use the Buttner-Palmer Contract as the basis for actual damages for a copyright infringement claim.

**B.      Damages for Infringement Stemming from the Creation of Architectural Drawings Cannot be Based on the Construction of a Building.**

Second, even if the Court were to find that the Rich & Gardner Plans infringe the Buttner Plans, damages stemming from infringement via the creation of architectural drawings cannot be based on the construction of the Station.  Plaintiff's cross motion for partial summary judgment is limited to the claim that Rich & Gardner infringed the Buttner Drawings via the drafting of the Rich & Gardner Plans and as such, any damages would have to be based on the creation of the plans, and not the construction of the Station As-Built.

Per 17 U.S.C. § 504(b), Plaintiff's potential recovery is limited to "actual damages suffered by him or her *as a result of the infringement*" and "any profits of the infringer that are *attributable to the infringement* and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b) (emphasis added).  Thus, the damages, if any, are those "suffered by [Plaintiff] as a result of *the infringement*" and any "profits earned by [Rich & Gardner] attributable to *the infringement*."  Here, the "infringement" alleged by Plaintiff in this motion is the reproduction of the Buttner Plans and the drafting of the Rich & Gardner Plans. Consequently, the damages, if any, could only stem from the alleged reproduction or the creation of the Rich & Gardner Plans themselves.  Thus, the potential damages for infringement via the creation of drawings cannot be based on the construction of a building.

Accordingly, Defendant seeks an order that Plaintiff may not use construction costs or profits associated with the construction of the Station As-Built as the basis for damages arising from alleged copyright infringement via reproduction or drafting of the Rich & Gardner Plans.

## CONCLUSION

For the reasons stated in above, Rich & Gardner respectfully requests that the Court deny Plaintiff's motion for partial summary judgment on its copyright infringement claim. Rich & Gardner further requests that the Court grant its cross-motion for partial summary judgment as to a declaration of non-infringement, and a declaration that Plaintiff's damages, if any, cannot be based on the Buttner-Palmer Contract or the construction of the Station As-Built.

**DATED:** April 30, 2014

**HARRIS BEACH PLLC**

By: _s/James R. Muldoon_
James R. Muldoon (506772)
Brendan M. Palfreyman (518215)
333 W. Washington Street, Suite 200
Syracuse, New York 13202
Telephone:    (315) 423-7100
Facsimile:    (315) 422-9331

*Attorneys for Defendant Rich & Gardner Construction Company, Inc.*