UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRIAN R. BUTTNER, individually and
d/b/a APPLIED DESIGN RESEARCH
ASSOCIATES,

                                    Plaintiff,

                    -against-                                    5:13-CV-0342 (LEK/ATB)

RD PALMER ENTERPRISES, INC.;
RICHARD PALMER; RICH AND
GARDNER CONSTRUCTION
COMPANY, INC.; DUNN & SGROMO
ENGINEERS, PLLC; and ROBERT
CHARLES ABBOTT, JR.,

                                    Defendants.
_____

## MEMORANDUM-DECISION and ORDER

## I.      INTRODUCTION

         Plaintiff Brian R. Buttner ("Plaintiff") commenced this action alleging copyright

infringement and related state law claims against Defendants Rich and Gardner Construction

Company, Inc. ("Rich and Gardner"); RD Palmer Enterprises, Inc. and Richard Palmer (together,

"Palmer"); and Dunn & Sgromo Engineers, PLLC ("Dunn & Sgromo") (collectively, "Defendants").

Dkt. No. 1 ("Complaint").  On Nov 27, 2013, the Court granted Defendants' Motion for partial

judgment on the pleadings, leaving only Plaintiff's claims for copyright infringement against all

Defendants and breach of contract against Palmer remaining.  See Dkt. No. 59 ("November Order")

at 9.  Presently before the Court are several Motions and Cross-Motions for summary judgment by

the parties.  Dkt. Nos. 77 ("Plaintiff Motion"); 83 ("Rich and Gardner Cross-Motion"); 84 ("Palmer

Cross-Motion"); 89 ("Rich and Gardner Motion"); 131 ("Dunn & Sgromo Motion"); 133 ("Rich

and Gardner Second Motion").[1]  For the following reasons, Plaintiff's Motion is denied,

Defendants' Motions for summary judgment on the copyright infringement claims are granted, and

Palmer's Cross-Motion for summary judgment on the breach of contract claim is denied.

## II.     BACKGROUND

### A.  Factual Background

The material facts are not in dispute except where otherwise noted.  Plaintiff, who does

business as Applied Design Research Associates, is an architect who resides in New York.  Dkt. No.

77-1 ("Plaintiff Statement of Material Facts - Plaintiff Motion") ¶¶ 1-3.  On March 14, 2006, Palmer

hired Plaintiff to provide various services relating to the renovation of a gas station in Cortland,

New York, owned and operated by Palmer.  Dkt. No. 84-1 ("Palmer Statement of Material Facts -

Cross Motion") ¶ 1.  Plaintiff was contracted to design a new building, or an addition to the existing

building, for what amounted to essentially a combined Dunkin' Donuts, convenience store, and gas

station.  See id. ¶ 3.

Among the services Plaintiff rendered was the creation of architectural drawings.  Pl. SMF -

Pl. Mot. ¶ 4.  Plaintiff registered his architectural drawings and architectural work with the

Copyright Office, which were identified by Copyright Registration Numbers VAu-1-073-656 and

VAu-1-075-551, respectively.  Id. ¶¶ 5-6.  In total, Plaintiff's works consisted of the following: (1)

eight site plans; (2) a floor plan dated July 19, 2006, and two elevations dated January 12, 2007 (the

"2006 Buttner Plans"); and (3) a floor plan dated April 10, 2008, and two elevations dated August 5,

---

[1] Also before the Court are Motions for judgment on the pleadings and for summary
judgment by Defendant Robert Charles Abbott, Jr. ("Abbott").  Dkt. Nos. 91; 93.  Plaintiff and
Abbott subsequently stipulated to dismissal with prejudice of all claims against Abbott, and
therefore Abbott's Motions are moot.  See Dkt. Nos. 130; 132.

2008 (the "2008 Buttner Plans") (collectively, the "Buttner Plans").  Dkt. No. 83-2 ("Rich and Gardner Statement of Material Facts - Cross-Mot.") ¶ 6.

Plaintiff's agreement with Palmer permitted Palmer to use the Buttner Plans to seek quotes from contractors.  Id. ¶ 9.  Accordingly, the 2008 Buttner Plans were provided to Rich and Gardner to prepare a cost estimate.  Id.  After Palmer and Plaintiff's one-year agreement expired, Palmer ceased engagement with Plaintiff—allegedly due to Plaintiff's "inability to move the [project] through various regulatory hurdles."  Id. ¶ 8; see also Palmer SMF - Cross-Mot. ¶¶ 4-7.  Palmer then retained Rich and Gardner to complete the project.  Rich and Gardner SMF - Cross-Mot. ¶ 12. Rich and Gardner later drafted a set of plans (the "Earliest Rich and Gardner drawings") "based on, but different than, the Buttner Plans."  Id. ¶ 15.  Palmer and Rich and Gardner then procceded with the construction of the project based on Rich and Gardner's plans, and the project was completed in July 2011 (the "Station As-Built").  Id. ¶¶ 16-18.

Dunn & Sgromo is an engineering firm that was retained by Palmer in July 2007 to be the site engineer and obtain the necessary municipal approvals for the project.  Dkt. No. 131 ("Dunn & Sgromo Statement of Material Facts") ¶¶ 9, 13.  Plaintiff provided Dunn & Sgromo with the Buttner Plans to prepare a series of traffic studies to be submitted to the New York State Department of Transportation ("DOT") to obtain necessary permits for the project.  Id. ¶ 14.  Dunn & Sgromo worked with Plaintiff on modifying the Buttner Plans to meet DOT's requirements.  Id. ¶ 15.  The scope of Dunn & Sgromo's authorization to modify and utilize the Buttner Plans, however, is in dispute.  See id. ¶¶ 16-18; Dkt. No. 136-3 ("Plaintiff Response Statement of Material Facts - Dunn & Sgromo") ¶¶ 13, 16-20.

**B. Procedural Background**

Plaintiff's Complaint alleged (1) copyright infringement, misappropriation, unjust enrichment, and unfair competition against all Defendants; and (2) breach of contract against Palmer. Compl. In the November Order, the Court dismissed all but Plaintiff's copyright infringement claim against all Defendants and Plaintiff's breach of contract claim against Palmer. Nov. Order.

Several Motions and Cross-Motions for summary judgment ensued. Plaintiff has moved for partial summary judgment against Palmer and Rich and Gardner on Plaintiff's claim that the Earliest Rich and Gardner drawings infringed on the 2008 Buttner Plans. See Pl. Mot; Dkt. No. 77-4 ("Plaintiff Memorandum - Plaintiff Motion"). Rich and Gardner has filed a Cross-Motion on the same issue, while Palmer filed a Cross-Motion on both the alleged infringement of the Earliest Rich and Gardner drawings and the Station As-Built, as well as on the breach of contract claim. Rich and Gardner Cross-Mot.; Palmer Cross-Mot.; Dkt. Nos. 84-4 ("Palmer Memorandum - Cross-Motion"); 85 ("Rich and Gardner Memorandum - Cross Motion"). Rich and Gardner then filed a Motion for partial summary judgment on the issue of infringement by the Station As-Built. Rich and Gardner Mot.; Dkt. No. 89-1 ("Rich and Gardner Memorandum - Motion"). Dunn & Sgromo has separately moved for summary judgment on the copyright infringement claims against it. Dunn & Sgromo Mot.; Dkt. No. 131-17 ("Dunn & Sgromo Memorandum"). Rich and Gardner has also filed a Second Motion for summary judgment on both infringement claims, but based on different grounds. Rich and Gardner Second Mot.[2] Rich and Gardner and Plaintiff were also granted leave to file

_____

[2] The parties dispute whether Rich and Gardner's Second Motion was a permissible filing or an unauthorized sur-reply. Because the Court finds *infra* that Rich and Gardner is entitled to summary judgment on all copyright infringement claims against it based on the Cross-Motions and

Memoranda of law on the Second Circuit's recent decision in <u>Zalewski v. Cicero Builder Dev. Inc.</u>, 754 F.3d 95 (2014).  Dkt. Nos. 112; 113.

## III.    LEGAL STANDARD

### A.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>Taggart v. Time, Inc.</u>, 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the moving party shows that there is no genuine dispute as to any material fact, the burden shifts to the nonmoving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Id.</u>  This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Corp.</u>, 475 U.S. 574, 586 (1986).  Mere conclusory allegations, speculation, or conjecture will not avail a party opposing summary

Rich and Gardner's Motion, Rich and Gardner's Second Motion is therefore moot, and the Court need not address whether the Motion could otherwise be considered.

judgment.  <u>Kulak v. City of N.Y.</u>, 88 F.3d 63, 71 (2d Cir. 1996).

At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000); <u>Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.</u>, 164 F.3d 736, 742 (2d Cir. 1998).  A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them."  <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).  "The role of the court is not to weigh the evidence and determine the truth of the matter, but rather to perform the 'threshold inquiry of whether there is the need for a trial.'"  <u>Feder v. Target Stores</u>, No. 11-CV-3675, 2014 WL 1651955, at *2 (E.D.N.Y. Apr. 24, 2014) (quoting <u>Anderson</u>, 477 U.S. at 249-50 (1986)).

### B.  Copyright Infringement

As discussed in greater detail *infra*, this case turns on the issue of substantial similarity. "[B]ecause the question of substantial similarity typically presents an extremely close question of fact, questions of non-infringement have traditionally been reserved for the trier of fact."  <u>Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.</u>, 602 F.3d 57, 63 (2d Cir. 2010) (internal citation omitted).  Nevertheless, "it is entirely appropriate for a district court to resolve that question as a matter of law, 'either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'"  <u>Id.</u> (quoting <u>Warner Bros. Inc. v. Am. Broad. Cos.</u>, 720 F.2d 231, 240 (2d Cir. 1983)).

## IV.    DISCUSSION

### A.  Copyright Infringement: Rich and Gardner and Palmer

#### 1. Preliminary Issues

Plaintiff has alleged two distinct claims of copyright infringement against Rich and Gardner and Palmer: (1) that the Earliest Rich and Gardner drawings infringed on the 2008 Buttner Plans; and (2) that the Station As-Built infringed on the 2008 Buttner Plans.  See generally Pl. Mem. - Pl. Mot.  The Court notes that the parties' Motions address the individual claims for copyright infringement separately, and the burden in each case remains with the moving party.  However, the appropriateness of awarding summary judgment as to all claims has been placed before the Court, and the issues presented in each are quite similar.  Therefore, for purposes of clarity and efficiency, the Court has consolidated the issues in its analysis *infra*, but indicates a particular party's burden where necessary.

Another preliminary matter the Court must address is that both Palmer and Rich and Gardner argue that the proper analysis requires comparing their works not just to the 2008 Buttner Plans, but to the entirety of the Buttner Plans.  See generally Rich and Gardner Mem. - Cross-Mot.; Palmer Mem. - Cross Mot.  Palmer and Rich and Gardner assert that Plaintiff may not "pick and choose" which portion of his copyrighted work should be analyzed, as the "work" for which Plaintiff possess a copyright includes eight site plans, two floor plans, and four elevations.  See Rich and Gardner Mem. - Cross-Mot. at 12-13.  In support, Rich and Gardner cites Zalewski, 875 F. Supp. 2d at 153 n.22, where the court rejected plaintiffs' argument that the court should compare only a portion of their architectural works, "[b]ecause the substantial similarity analysis . . . concerns the 'total concept and overall feel' of plaintiffs' works, [and thus] it is insufficient to demonstrate that a single

component of the design, such as an individual floor plan or elevation view, has been copied." (quoting Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 133 (2d Cir. 2003)).  Although the Court is persuaded by this language, it was made in *dicta*, and Rich and Gardner has provided no binding authority—and the Court is aware of none—establishing whether the proper comparison should be made with respect to the entirety of Plaintiffs' works.[3]  In any event, the Court need not fashion a rule in this case because, even comparing only the 2008 Buttner Plans—which are indisputably the most similar of Plaintiff's drawings to the Earliest Rich and Gardner Drawings—the Court finds that "no reasonable jury, properly instructed, could find that the two works are substantially similar."  Warner Bros. Inc., 720 F.2d at 240 (citation omitted).

## 2. Legal Standard

Copyright protection extends to "original works of authorship fixed in any tangible medium of expression."  17 U.S.C. § 102.  Following the passage of the Architectural Works Copyright Protection Act ("AWCPA"), "architectural works were added to the list of copyrightable works of authorship."  Axelrod & Cherveny Architects, P.C. v. Winmar Homes, No. 05-CV-711, 2007 WL 708798, at *2 (E.D.N.Y. Mar. 6, 2007) (citing 17 U.S.C. § 102(a)(8)); see also 17 U.S.C. § 101 (defining an "architectural work" as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings").  It is well-settled that architectural drawings receive copyright protection under both 17 U.S.C. § 102(a)(5) and § 102(a)(8).  See Attia v. Soc'y of N.Y. Hosp., 201 F.3d 50, 52 n.3 (2d Cir. 1999); see also H.R.

---

[3] The Court is aware of an "aggregate analysis" being employed in other scenarios, such as evaluating alleged infringement of a book in comparison to a television series.  See Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc., 150 F.3d 132, 138 (2d Cir. 1998).  However, the Court is not aware of a clear rule with respect to architectural works specifically.

REP. NO. 101-735, at 17 (1990), as reprinted in 1990 U.S.C.C.A.N. 6935, 6950 ("An individual creating an architectural work by depicting that work in plans or drawing[s] will have two separate copyrights, one in the architectural work (section 102(a)(8)), the other in the plans or drawings (section 102(a)(5)).").

"In order to make out a claim of copyright infringement for an architectural work—or any work—a plaintiff must establish three things: 1) that his work is protected by a valid copyright, 2) that the defendant copied his work, and 3) that the copying was wrongful." Zalewski, 754 F.3d at 100 (citing Arnstein v. Porter, 154 F.2d 464, 468, 472-73 (2d Cir. 1946) and Laureyssens v. Idea Grp., Inc., 964 F.2d 131, 139-41 (2d Cir. 1992)).  Moreover, "*[d]e minimis* copying is not actionable." Id. (citing Ringgold v. Black Entm't Television, Inc., 126 F.3d 70, 74 (2d Cir. 1997)).

### 3. Application

#### a. Valid Copyright

In judicial proceedings, a certificate of copyright registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).  Once the plaintiff has established a *prima facie* case of copyright validity, "the burden to prove otherwise shifts to the defendants." CJ Prods. LLC v. Snuggly Plushez LLC, 809 F. Supp. 2d 127, 142 (E.D.N.Y. 2011) (citing Hasbro Bradley, Inc. v. Sparkle Toys, Inc., 780 F.2d 189, 192 (2d Cir. 1985)).

Here, Plaintiff registered the architectural drawings with the Copyright Office on July 27, 2011.  See Dkt. 77-6.  Neither Rich and Gardner nor Palmer disputes the validity of the copyright, and thus there is no triable issue of fact with regard to the validity of Plaintiff's copyright.

### b. Actual Copying

"Actual copying may be established 'either by direct evidence of copying or by indirect evidence, including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony.'" Castle Rock Entm't, 150 F.3d at 137 (quoting Laureyssens, 964 F.2d at 140).

Here, Plaintiff offers two arguments to establish that Palmer and Rich and Gardner directly copied Plaintiff's drawings. First, Plaintiff argues that Steve Small, an employee of Rich and Gardner, admitted that he "referred" to Plaintiff's architectural drawings while drafting his design of the floor plan and elevations. Pl. Mem. - Pl. Mot. at 12 (citing Dkt. No.77-18 ("Small Deposition") at 18:1-7 ("Q: . . . [D]id you refer to the paper form of the [Buttner] drawings during the process of creating your AutoCAD design? A: I would refer to them, I believe, yeah. Q: Okay. So you go back to them and look at them while you were drawing up your design. A: I believe so, yeah.")). Second, Plaintiff points out that the initial proposal from Rich and Gardner to Palmer, submitted by non-party Joe Donegan, stated, "Our proposal is based on the site plans by Dunn & Sgromo Engineers . . . and the architectural drawings by Applied Design Research Associates showing the new building and floor plan and elevation." Id. at 12 (citing Dkt. No. 77-11, Ex. 7 at 8); see also id. at 6 (indicating that in the contract between Palmer and Rich and Gardner under § 9.1.5 titled "The Drawings," included "Floor plan and elevation drawing by Applied Design Research Associates").

Although Rich and Gardner and Palmer dispute whether this evidence constitutes direct copying, see Rich and Gardner Mem. - Cross-Mot. at 6-7; Palmer Mem. - Cross-Mot. at 3, the Court is persuaded by Plaintiff's arguments. However, because the Court finds that this case turns on element three—wrongful copying—it assumes, without deciding, that Plaintiff has met his burden in

demonstrating actual copying.[4]

c. <u>Wrongful Copying/Substantial Similarity</u>[5]

"The standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" <u>Yurman Design, Inc. v. PAJ, Inc.</u>, 262 F.3d 101, 111 (2d Cir. 2001) (quoting <u>Hamil Am., Inc v. GFI</u>, 193 F.3d 92, 100 (2d Cir. 1999)). In applying the "ordinary observer test," the question raised is whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." <u>Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)</u>, 71 F.3d 996, 1002 (2d Cir. 1995) (internal quotation marks omitted). However, where works

---

[4] Plaintiff also argues that Palmer and Rich and Gardner's direct copying of the 2008 Buttner Plans is evident in the fact that Plaintiff's plans had a red "progress print stamp," and Palmer and Rich and Gardner both later produced copies where the stamp was black and white; thus, the black-and-white versions were clearly copies of the original version with the red stamp. Pl. Mem. - Pl. Mot. at 10-11. Palmer and Rich and Gardner argue that these prints were only copied as part of their disclosure requirements for this litigation and thus do not constitute wrongful copying. <u>See</u> Rich and Gardner Mem. - Cross-Mot. at 6-7; Palmer Mem. - Cross-Mot. at 3. Although Palmer and Rich and Gardner have provided persuasive evidence on this issue, their argument speaks not to a lack of actual copying, but that any coping was not wrongful copying. Such argument is more properly analyzed under the third element of the infringement analysis. In any event, it does not refute Plaintiff's other evidence of actual copying.

[5] Before engaging in the wrongful copying analysis—i.e. the substantial similarity analysis—the Court notes briefly the common confusion that arises in the use of the term "substantial similarity." As stated by the Second Circuit in <u>Zalewski</u>:

> When an original work contains many *un*protected elements, . . . a close similarity between it and a copy may prove only copying, not wrongful copying. This is because the similarity may derive only from these unprotected elements. For clarity, the term "substantial similarity" is properly reserved for similarity that exists between the protected elements of a work and another work. If two works are "substantially similar," any copying was wrongful. . . . By contrast, similarity that relates to unprotected elements is probative only of copying—not wrongful copying—and is referred to as "probative similarity."

754 F.3d at 101.

"have both protectible and unprotectible elements"—as Plaintiff has conceded here, <u>see</u> Pl. Mem. - Pl. Mot. at 15—the analysis must be "more discerning," <u>Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.</u>, 25 F.3d 119, 123 (2d Cir. 1994), and "must attempt to extract the unprotectible elements from . . . consideration and ask whether the protectible elements, standing alone, are substantially similar," <u>Knitwaves, Inc.</u>, 71 F.3d at 1002 (emphasis omitted).  In applying the "more discerning ordinary observer" test, the Court is principally guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work," <u>Tufenkian</u>, 338 F.3d at 133; <u>see also</u> <u>Boisson v. Banian, Ltd.</u>, 273 F.3d 262, 272 (2d Cir. 2001); <u>Knitwaves Inc.</u>, 71 F.3d at 1003, as instructed by the Court's "good eyes and common sense," <u>Hamil Am.</u>, 193 F.3d at 102 (alteration omitted).

Because Plaintiff's drawings contain many unprotectible elements, "in the end, our inquiry necessarily focuses on whether the alleged infringer has misappropriated the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." <u>Gaito Architecture</u>, 602 F.3d at 66 (quoting <u>Knitwaves Inc.</u>, 71 F.3d at 1004) (internal quotation marks omitted).  Moreover, "the narrow scope of protectible expression necessitates that plaintiffs show something akin to 'near identity' between the works in question to prevail." <u>Zalewski v. T.P. Builders, Inc.</u>, 875 F. Supp. 2d 135, 148 (N.D.N.Y. 2012) <u>aff'd sub nom.</u> <u>Zalewski</u>, 754 F.3d 95 (citing, *inter alia*, Nimmer § 13.03[A][4] ("More similarity is required when less protectible matter is at issue.").[6]

---

[6] The Court dispels any notion that this standard amounts to categorically affording architectural works less protection.  Indeed, "Courts should treat architectural copyrights no differently than other copyrights." <u>Zalewski</u>, 754 F.3d at 104.  The standard discussed *supra* pertains to any copyrighted work consisting of largely unprotectible elements and is not exclusive to architectural works.

Before the Court turns to the comparison of the works at issue, it notes that "[w]here, as here, [P]laintiff[] point[s] to a variety of alleged similarities between two works, we are required to determine whether any alleged 'similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking.'" Gaito Architecture, 602 F.3d at 67 (quoting Tufenkian, 338 F.3d at 134-35); see also Zalewski, 754 F.3d at 103 (discussing, in comparing architectural works, the appropriate standard for substantial similarity and noting "[t]he central question of this case is how to . . . separate the protectible from the unprotectible in architectural works"). "In these cases, we 'must be more discerning, [and] ignor[e] those aspects of a work that are unprotectible' as we apply the test, lest we conflate mere copying with wrongful copying.'" Id. at 102 (quoting Laureyssens, 964 F.2d at 141).

The Second Circuit's recent decision in Zalewski, 754 F.3d 95, and relevant provisions of the Code of Federal Regulations, are particularly instructive on which elements in architectural works are unprotectible and thus should not be considered in the Court's substantial similarity analysis. Specifically, unprotectible elements of architectural works include, but are not limited, to: (1) "Standard configurations of spaces," 37 C.F.R. § 202.11(d)(2); (2) "individual standard features, such as windows, doors, and other staple building components," id.; (3) market expectations, Zalewski, 754 F.3d at 105; (4) "any design elements attributable to building codes, topography, structures that already exist on the construction site, or engineering necessity," id.; (5) "generalized notions of where to place functional elements, how to route the flow of traffic, and . . . methods of construction," id. (quoting Attia, 201 F.3d at 55); (6) design parameters, described as "constraints placed on an architect by the way her client plans to use the building," Zalewski, 754 F.3d at 106; and (7) "features that are essential or common to the architectural style within which the builder

13

designed the structure," <u>Zalewski</u>, 875 F. Supp. 2d. at 145.

In comparing the 2008 Buttner Plans to both the Earliest Rich and Gardner drawings and the Station As-Built, the Court has conducted a visual examination of the following: (1) Plaintiff's version of a side-by-side comparison between the 2008 Buttner Plans (floor plans and elevation drawings) and the Earliest Rich and Gardner drawings, Dkt. No. 77-13, Ex. 9; (2) Rich and Gardner's version of a side-by-side comparison between the 2008 Buttner Plans and the Earliest Rich and Gardner drawings, Dkt. No. 83-7, Ex. B; (3) Rich and Gardner's side-by-side comparison of the 2008 Buttner plans and the Station As-Built, Dkt. No. 83-6, Ex. A; (4) the Buttner site plans, Dkt. No. 83-8, Ex. C; (5) the 2008 Buttner plans, Dkt. No. 83-10, Ex. E; (6) the Earliest Rich and Gardner drawings, Dkt. No. 83-11, Ex. F; and (7) photographs of the Station As-Built, Dkt. No. 83-14, Ex. I. The Court has also carefully reviewed, *inter alia*, the parties' respective Affidavits and Statements of Material Facts, and Buttner's Interrogatory Response. Dkt. Nos. 77-2 through 3; 89-19 through 20; 84-3; Pl. SMF - Pl. Mot.; Rich and Gardner SMF - Cross-Mot.; Palmer SMF - Cross-Mot.

The Court first considers Plaintiff's Motion for partial summary judgment on the issue of infringement by the Earliest Rich and Gardner drawings. Plaintiff has submitted a side-by-side comparison of the 2008 Buttner Plans and the Earliest Rich and Gardner drawings and "respectfully submit[s] that the drawings are virtually identical." Pl. Mem. - Pl. Mot. at 17. However, Plaintiff's argument is wholly conclusory. Plaintiff does not make a single reference to his Exhibit to describe *how* the works are similar, nor which elements in his drawings are protectible. <u>See</u> <u>id.</u> Thus, Plaintiff has failed to demonstrate his entitlement to summary judgment on his first claim for copyright infringement.

14

Turning to Palmer's and Rich and Gardner's Motions, they have argued at length asserting numerous differences between the 2008 Buttner Plans and Earliest Rich and Gardner drawings and the Station As-Built. See generally Rich and Gardner Mem. - Cross-Mot.; Palmer Mem. - Cross-Mot.; Rich and Gardner Mem. - Mot. Plaintiff has failed to specifically contradict their arguments—instead, focusing primarily on the relevant legal standards—or inform the Court of any triable facts at issue. However, because Plaintiff is the non-movant with respect to the remaining Motions, the Court must resolve all inferences in his favor. Therefore, the Court has carefully reviewed the entirety of Plaintiff's submissions and has found one instance in which Plaintiff offers specific arguments with respect to the copying of protectible elements.[7] See Dkt. No. 100-2 ("Plaintiff Response to Rich and Gardner Cross-Motion") at 9 ("[T]he following is a list of some of the specific instances of protectible elements being common throughout Plaintiff's Drawings, Rich & Gardner's drawings, and/or the as-built structure itself."). The Court notes that this list was provided with respect to establishing probative similarity—the second element discussed *supra*—as opposed to substantial similarity. See id. However, the Court will consider Plaintiff's list to the extent it may help him survive Rich and Gardner's and Palmer's Motions for summary judgment on the copyright infringement claims.

Plaintiff alleges that the following elements contained in the 2008 Buttner Plans were improperly appropriated in the Earliest Rich and Gardner Drawings and the Station As-Built:

(1) A Dutch gabled roof with integrated front gable to accentuate the Dunkin['] Donut[s] store;

---

[7] Plaintiff has also included a list of "original design elements" in his Response to Defendants' First Set of Interrogatories, but it pertains only to the Buttner Plans and does not contain any reference to similarities between Plaintiff's drawings and the allegedly infringing works. See Dkt. No. 89-18 at 17-18.

(2) A projected dining bay in front (south) elevation to accentuate the Dunkin['] Donut[s] store;

(3) The placement of the dining area, tables, and chairs in proximity to the large, southerly facing windows in dining area of the Dunkin Donut store to use sunlight as a partial replacement for electrical lighting and to provide a comfortable dining experience for customers;

(4) Stonework along the lower section of the building exterior (all sides) to deemphasize the commercial nature of this store and enhance the horizontal lines of the building;

(5) Stone facing on the main entry columns to enhance entrance "sense of arrival" versus utility or service doors on the west drive-thru side;

(6) Square portal window for the Manger's Office on the North East corner of the building facing the fuel aisles;

(7) Cupola with vents and arched trim on the ridge of the Dutch hip roof aligned with the main entry as a focal point and to break up the long roof line;

(8) Recessed directional entrance doors;

(9) Interior layout of the Convenience Store beer/cooler room that incorporates cooler doors and shelves from the existing ExxonMobil store on site. Mr. Palmer requested to work existing equipment into new design if feasible;

(10) Location of the Manager's Office with visual access to the fuel aisle in lieu of space at back of store;

(11) Prominent cashier counter at the center of the store to control entry access and also have clear visibility of the convenience shopping area;

(12) Angular central wall between the Donut store and convenience store to consolidate space, provide surveillance, equipment recess, and security for the leased space in after-hours operations of the convenience store portion of the Station;

(13) Specific configuration for the permanent wall alcove to house trash receptacle;

(14) Common plumbing core for restrooms & wet service area for Dunkin['] Donut[s] store; and

(15) Decorative circular gable vent to break up plain facade on south elevation high gable end facing Clinton Avenue.

Id. As outlined below, nearly all of the claimed similarities fall into one of the categories of unprotectible expression in architectural works discussed *supra*. The Court addresses each element in turn.

With respect to the Dutch gabled roof with integrated front gable, Plaintiff has all but admitted that this choice was unoriginal. See Dkt. Nos. 89-14 through 15 (together, "Buttner Deposition") at 202:22-25 ("Q: Are Dutch gabled roofs common to a particular architectural style of building? A: They can be but they're coming back very popularly in modern architecture now.").

16

Moreover, courts have noted that use of a gabled entry is not protectible expression. See, e.g., Rottlund Co. v. Pinnacle Corp., No. CIV.01-1980, 2004 WL 1879983, at *14 (D. Minn. Aug. 20, 2004), report and recommendation adopted (Oct. 19, 2004) ("The Court 'filters out' the use of individual elements of Rottlund's drawings. The use of, for instance, gabled entries, lofts, or fireplaces in this case represent mere ideas that others may utilize without consequence." (citing Sturdza v. United Arab Emirates, 281 F.3d 1287, 1297 (D.C. Cir. 2002)).

As to the projected dining bay and the placement of dining areas near the windows, Plaintiff's Deposition reveals that these decisions were dictated by market forces, particularly consumer desires when patronizing fast-food establishments. See Buttner Dep. at 201:9-202:7 ("I would say [customers] certainly desire it."). However, "[d]esign features used by all architects, because of consumer demand, . . . get no protection." Zalewski, 754 F.3d at 105. Buttner also noted that the projected dining bay and placement of tables and chairs near the windows served a functional concern. See Buttner Dep. at 201:9-202:7 (noting that many customers prefer to eat near a window at fast-food establishments so that they can keep an eye on their vehicles while dining).

Regarding the stonework along the lower section of the building exterior, Palmer stated, and Plaintiff has not disputed, that it was Palmer's request to have the stonework placed across the exterior of the wall, and only along the lower part of the wall. See Dkt. No. 83-16 ("Palmer Deposition") at 72:2-15. Thus, the stonework is a design parameter not subject to protection. See Zalewski, 754 F.3d at 106.

As to both the location of the manager's office and placement of the window to allow the manager a view of the fuel aisles, it is undisputed that this element was specifically requested by Palmer, and thus is not original to Plaintiff. See Palmer Dep. at 62:22-63:1 ("Q: Had you expressed

17

any requests to Mr. Buttner regarding a location of an office for you in your business? A: Yes.  I wanted it to the front of the gas station just so that way I could keep an eye on the pumps outside."); see also Buttner Dep. at 199:7-10 ("A: . . . [T]he specific design of the manager's office in the corner of the building so he or she could see the pumps was a specific design parameter requested by Mr. Palmer.").

Concerning the recessed directional entrance doors, this is a standard feature that is not protectible.  See 37 C.F.R. § 202.11(d)(2).

As to the interior layout of the beer/cooler room, Plaintiff's allegation itself states both that Mr. Palmer requested it, and that it was based on pre-existing structures already in the building.  See Pl. Resp. - Rich and Gardner Cross-Mot. at 9 (noting that the interior layout was designed to "incorporate[] cooler doors and shelves from the existing ExxonMobil store on site" and that "Mr. Palmer requested to work existing equipment into new design if feasible").

Regarding the cashier counter at the center of the store, this choice was irrefutably dictated by functional concerns to detect and prevent theft.  See Buttner Dep. at 198:13-16 ("Q: In convenience store spaces, is it functional to have the checkout counter in a location where you can view the merchandise? A: Normally yes. Yes."); see also id. at 198:21-24 ("Q: What features of your . . . building address functional or utilitarian concerns? A: I believe in the case of that design, the central location of the checkout counter . . . not only services to keep an eye on the groceries and the convenience store area but also a direct visual connection to the fuel pumps; as well as being what we call in the practice a gate keeper for the only entrance in and out so somebody can't walk out with a six-pack of beer and somebody else didn't see them.").

With respect to the angular center wall between the Dunkin' Donuts store and the convenience store, it is both a functional element as well as an unprotected standard shape. Indeed, Plaintiff states it was constructed so as to consolidate space and provide for surveillance and security. See Pl. Resp. - Rich and Gardner Cross-Mot. at 9; see also Greenberg v. Town of Falmouth, No. CIV.A. 04-11934, 2006 WL 297225, at *3 (D. Mass. Feb. 8, 2006) (finding plaintiff architect's "use of forty-five degree angled walls" both functional and a basic geometric shape not subject to protection) (citing Yankee Candle Co., Inc. v. Bridgewater Candle Col, LLC, 259 F.3d 25, 35 (1st Cir. 2001)).

As to the common plumbing core for the restrooms and wet service area, Plaintiff admitted that this is a standard configuration. Buttner Dep. at 198:17-20 ("Q: Is it a standard configuration of spaces to have rooms that use common utilities such as electricity or plumbing adjacent to each other? A: Yes, for economy's sake.").

Finally, regarding the circular gable vent, while Plaintiff alleges an aesthetic component to his selection and arrangement of this element, he also makes clear that it was dictated in large part by a functional or utilitarian concern to allow heat to escape. See Buttner Dep. at 182:8-18 ("Q: You mentioned the circular vent and the Dutch gable. What was the purpose of that for your architectural design? A: Twofold. The functional aspect of it was to vent out the top of the truss space so that heat didn't build up and then cause moisture buildup, which would have then lead to mold, which probably the majority of us have in the top of their homes. The second was an aesthetic element to basically break up just the flat of the EP - EIPS of the two end gables of the building that I designed."); see also id. 179:13-19 ("I had to put a ventilation in the top of that, though, so that's one of the reasons I went with the Dutch gable on the side, to provide a circular

vent in this case.").

Thus, out of the fifteen elements Plaintiff has claimed to be protectible, the Court finds that only two constitute protectible expression: (1) the stone facing on the main entry columns, and (2) the cupola on the Dutch hip roof. The Court must now "extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." Knitwaves, Inc., 71 F.3d at 1002.

As to the stone facing on the main entry columns, the Court notes that this element is not included in the Station As-Built. With respect to the Earliest Rich and Gardner drawings, even when compared only to the 2008 Buttner plans, the Court finds that they are not substantially similar. Specifically, the stones in Plaintiff's drawing are rectangular in shape, whereas in the Rich and Gardner drawings they are rounded. This difference may seem subtle when considered on an individual basis; however, the stone facing on the column consists of many stones pieced together to form a large pattern. Thus, when viewed broadly, a pattern comprised of circular versus rectangular shapes gives a different overall "concept and feel." Moreover, the main entry columns on the Rich and Gardner Drawings are significantly taller than in the 2008 Buttner Plans.

Finally, with regard to the cupola, the Court notes that this element is significantly different in the Station As-Built. In the 2008 Buttner Plans, the cupola is four-sided, with a spire, and located to the right-of-center on the roof. However, in the Station As-Built, the cupola is six-sided (hexagonal), has no spire, and is centered on the roof. Thus, there is a clear difference in the arrangement and selection of the cupola as between the 2008 Buttner Plans and the Station As-Built.

As compared to the Earliest Rich and Gardner drawings, the Court notes that the type of cupola used is identical to the 2008 Buttner Plans, and the placement is only slightly altered. Thus,

it appears that this element has been improperly appropriated.  However, substantial similarity "requires that the copying [be] quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred." Castle Rock, 150 F.3d at 138 (quoting Ringgold, 126 F.3d at 75). "'The quantitative component generally concerns the *amount* of the copyrighted work that is copied,' which must be more than 'de minimis.'" Id. (quoting Ringgold, 126 F.3d at 75) (emphasis added).  Thus, while Plaintiff's selection and arrangement of the cupola constitutes protectible expression, standing alone, wrongful copying of this single element cannot support a claim of infringement of the 2008 Buttner Plans.

In sum, out of all the elements Plaintiff claims to be both protectible and copied in the Earliest Rich and Gardner Drawing and the Station As-Built, all but one are either unprotectible, dissimilar, or not present.[8]  The Court recognizes the great level of effort and skill utilized by Plaintiff in producing his architectural works and acknowledges that there is certainly "something of Plaintiff's own expression in his work." Zalewski, 754 F.3d at 107.  However, "[t]he primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 349, (1991) (quoting  Art. I, § 8, cl. 8).  As Plaintiff has failed to demonstrate improper appropriation of the arrangement, selection, and coordination in the Buttner Plans, under the guidelines set forth in Zalewski, 754 F.3d 95, and the CFR, the Court finds that Plaintiff has shown at most copying, but not wrongful copying, either in the Earliest Rich and Gardner drawings or in the Station As-Built.

---

[8] Palmer and Rich and Gardner have also pointed out numerous differences between the Buttner Plans and both the Earliest Rich and Gardner drawings and Station As-Built.  Too numerous to recite herein, the Court notes that dissimilarity may be relevant to the substantial similarity analysis.  See Attia, 201 F.3d at 58.  However, the Court need not address these arguments because Plaintiff has failed to establish substantial similarity even among the protectible elements.

Accordingly, Palmer and Rich and Gardner are entitled to summary judgment on Plaintiff's copyright infringement claims.

**B. Breach of Contract: Palmer**

Palmer argues that he is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff provided his plans to Palmer with "actual knowledge and intent" that they be provided to Rich and Gardner, among others, for the purpose of obtaining construction cost estimates to attain financing for the project. Palmer Mem. - Cross-Mot. at 19-20. However, Palmer has not cited any of the language or provisions from the contract to support his claim. The Court cannot possibly determine whether Palmer breached (or did not breach) the contract without being apprised of the relevant provisions of the contract at issue. Moreover, although Palmer refers to Buttner's alleged "knowledge and intent," Palmer has not articulated a clear legal theory or provided any authority to support his position. The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp.</u>, 477 U.S. 317 at 323. Palmer's failure to inform the Court of the contract language or legal basis for his defense is therefore fatal to his Motion on the breach of contract claim.

Furthermore, Palmer's contention that the breach of contract claim is moot if the Court finds no copyright infringement, <u>see</u> Palmer Mem. - Cross-Mot. at 20, must also be denied because, again, Palmer has not informed the Court of the relevant language of the contract. Thus, it is unclear whether the issue of infringement is even relevant to the breach of contract claim. Accordingly, Palmer has failed to demonstrate that he is entitled to judgment as a matter of law on Plaintiff's breach of contract claim.

**C. Copyright Infringement: Dunn & Sgromo**

Dunn & Sgromo, which was retained by Palmer as the site engineer for the purpose of obtaining the necessary municipal approval and permits for the construction of the project, argues that it is entitled to summary judgment on Plaintiff's copyright infringement claim because: (1) it had express authorization from Buttner to use and revise the Buttner Plans; (2) Buttner worked with and assisted Dunn & Sgromo in revising the Plans, and thus acquiesced to any copying; and (3) Buttner never revoked or limited Dunn & Sgromo's authority to use and revise the Buttner Plans. Dunn & Sgromo Mem. at 2-3.

Plaintiff responds that: (1) Dunn & Sgromo hasn't established a *prima facie* case for an implied license, even under the "relaxed" meeting of the minds standard; and (2) even if Plaintiff gave Dunn & Sgromo a license, it was retroactive and only for one submission to the DOT. See generally Dkt. No. 136 ("Plaintiff Response - Dunn & Sgromo Motion"). Plaintiff argues at length that Dunn & Sgromo has not met its burden under the relevant legal standard to demonstrate an implied license, or that such license was unrestricted. See id. However, Plaintiff has failed to demonstrate any triable issue of fact because Plaintiff concedes that Dunn & Sgromo was granted, at minimum, Plaintiff's permission to make certain, defined changes and to submit on one occasion the Buttner Plans to the DOT; yet, Plaintiff has failed to adduce any facts demonstrating how Buttner exceeded the scope of this limited permission. Plaintiff concedes that "Plaintiff was only permitting Dunn & Sgromo to copy the drawings for one submission to the DOT and to make one change to one entrance/exit for traffic into the property and the 'turning arc.'" See id. at 5. Plaintiff then asserts, "The limited scope of this language did not authorize Dunn & Sgromo to use Plaintiff's drawings for its own profit on this project." Id. However, Plaintiff has not alleged any facts

indicating how Dunn & Sgromo wrongfully copied Plaintiff's works "for its own profit," or used the Buttner Plans beyond the permission granted. Indeed, Plaintiff appears to take issue with the fact that Dunn & Sgromo was used on the project and compensated by Palmer for its services. Id. at 8 (asserting that "Defendants collectively conspired to cut Plaintiff out of the project entirely"). However, again, Plaintiff fails to specify what acts taken by Dunn & Sgromo allegedly constituted copyright infringement. Therefore, the Court finds that there is no triable issue of fact and accordingly grants Dunn & Sgromo summary judgment on Plaintiff's copyright infringement claim.

### D. Subject Matter Jurisdiction

Federal district courts are "courts of limited jurisdiction," Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005), only having original subject-matter jurisdiction over cases in which there is a federal question, see 28 U.S.C. § 1331, or in which there is complete diversity of citizenship between the parties, see 28 U.S.C. § 1332. Moreover, "a federal court has an independent duty to determine that it has subject matter jurisdiction and may raise the issue *sua sponte*." D.B. Zwirn Special Opportunities Fund. L.P. v. Tama Broad., Inc., 550 F. Supp. 2d 481, 486 (S.D.N.Y. 2008).

Here, the Court has granted Defendants summary judgment on Plaintiff's copyright infringement claims, leaving only Plaintiff's breach of contract claim against Palmer remaining; thus, there does not appear to be any federal question presented. Moreover, with respect to the breach of contract claim against Palmer, both Plaintiff and Palmer (and the other Defendants) are New York citizens, see Compl. ¶¶ 4-9, and therefore diversity of citizenship is lacking. Thus, it appears that in light of the Court's dismissal of Plaintiff's copyright infringement claims, it no longer possesses subject matter jurisdiction over this action. However, in an abundance of caution,

24

the Court will allow Plaintiff thirty days from the date of this Memorandum-Decision and Order to submit a memorandum of law asserting the basis for subject matter jurisdiction.  Palmer shall have ten days thereafter to file a response.  If Plaintiff fails or elects not to file a memorandum of law, the Clerk shall dismiss this case for lack of subject matter jurisdiction.

V.      **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion (Dkt. No. 77) for partial summary judgment against Defendants RD Palmer Enterprises, Inc., Richard Palmer, and Rich and Gardner Construction Company, Inc. is **DENIED**; and it is further

**ORDERED**, that Defendant Rich and Gardner Construction Company, Inc.'s Cross-Motion (Dkt. No. 83) for partial summary judgment is **GRANTED**; and it is further

**ORDERED**, that Defendant Rich and Gardner Construction Company, Inc.'s Motion (Dkt. No. 89) for partial summary judgment is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's copyright infringement claims against Defendant Rich and Gardner Construction Company, Inc. are **DISMISSED** and Defendant Rich and Gardner Construction Company, Inc. is **DISMISSED** from this action; and it is further

**ORDERED**, that Defendants Richard Palmer and RD Palmer Enterprises, Inc.'s Cross-Motion (Dkt. No. 84) for summary judgment is **GRANTED in part and DENIED in part**, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Plaintiff's copyright infringement claims against Defendants Richard Palmer and RD Palmer Enterprises, Inc. are **DISMISSED**; and it is further

**ORDERED**, that Defendant Rich and Gardner Construction Company, Inc.'s Motion (Dkt. No. 89) for summary judgment is **GRANTED**; and it is further

**ORDERED**, that Defendant Rich and Gardner Construction Company, Inc.'s Second Motion (Dkt. No. 133) for summary judgment is **DENIED as moot**; and it is further

**ORDERED**, that Defendant Robert Charles Abbott, Jr.'s Motion (Dkt. No. 91) for judgment on the pleadings is **DENIED as moot**; and it is further

**ORDERED**, that Defendant Robert Charles Abbott, Jr.'s Motion (Dkt. No. 93) for summary judgment is **DENIED as moot**; and it is further

**ORDERED**, that Plaintiff's Letter Motion (Dkt. No. 98) to withdraw claims against Defendant Robert Charles Abbott, Jr. is **DENIED as moot**; and it is further

**ORDERED**, that all claims against Defendant Robert Charles Abbott, Jr. are **DISMISSED with prejudice** and Defendant Robert Charles Abbott, Jr. is **DISMISSED** from this action; and it is further

**ORDERED**, that Defendant Rich and Gardner Construction Company, Inc.'s Motion (Dkt. No. 124) to preclude Plaintiff's damages expert is **DENIED as moot**; and it is further

**ORDERED**, that Defendant Dunn & Sgromo Engineers, PLLC Motion (Dkt. No. 131) for summary judgment is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's copyright infringement claims against Defendant Dunn & Sgromo Engineers, PLLC's are **DISMISSED** and Defendant Dunn & Sgromo Engineers, PLLC is **DISMISSED** from this action; and it is further

**ORDERED**, that Plaintiff's Letter Motion (Dkt. No. 143) to strike is **DENIED as moot**; and it is further

**ORDERED**, that if Plaintiff wishes to maintain this action in the Northern District, he must file within thirty (30) days of the date of this Memorandum-Decision and Order a memorandum of law asserting the basis for the Court to exercise subject matter jurisdiction over Plaintiff's remaining breach of contract claim against Defendants Richard Palmer and RD Palmer Enterprises, Inc. Defendants may file a response within ten (10) days of Plaintiff's memorandum. If Plaintiff fails or elects not to file a memorandum of law on the issue of subject matter jurisdiction, the Clerk shall close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      March 31, 2015
            Albany, NY

Lawrence E. Kahn
U.S. District Judge